WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cathy Robinson, | No. CV-13-00387-TUC-DTF |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, | |
| Defendant. | |

Plaintiff Cathy Robinson filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). (Doc. 1.) Before the Court are Robinson's Opening Brief[1] and Defendant's Opposition to Robinson's Opening Brief. (Docs. 18, 21.) The parties have consented to Magistrate Judge jurisdiction. (Doc. 13.) Based on the pleadings and the administrative record submitted to the Court, this matter is remanded for further proceedings.

---

[1] Robinson's opening brief is 19 pages long with a 15 page appendix of facts and, therefore, in violation of the scheduling order and local rules. The scheduling order allowed 17 pages maximum, not including facts. (Doc. 4.) The local rules provide that the opening brief is limited to twenty-five pages inclusive of facts. LRCiv 16.1(d). Under the scheduling order and the local rules, the facts were to be included in the brief and Robinson failed to comply with that requirement. Additionally, Robinson used a font smaller than 13 point for the text, and a very small font size for the footnotes; all text is required to be at least 13 point. LRCiv 7.1(b)(1).

## PROCEDURAL HISTORY

Robinson filed an application for Supplemental Security Income (SSI) on October 7, 2009. (Administrative Record (AR) 159.) She alleged disability from January 1, 1992. (*Id.*) At the hearing, Robinson revised her onset date to October 2009.[2] (AR 42. 45.) Robinson's application was denied upon initial review (AR 55) and on reconsideration (AR 57). A hearing was held on June 6, 2011 (AR 40-53), after which ALJ Peter J. Baum found, at Step Five, that Robinson was not disabled (AR 25-33). The Appeals Council denied Robinson's request to review the ALJ's decision. (AR 1.)

## FACTUAL HISTORY

Robinson was born on March 1, 1961, making her 48 years of age at the onset date of her alleged disability. (AR 159.) Robinson last worked in 1992, earning a few hundred to several thousand dollars in any given year. (AR 167-68.)

The ALJ found Robinson had two severe impairments, anxiety disorder and borderline intellectual functioning. (AR 27.) The ALJ also considered the fact that Robinson had been diagnosed with degenerative scoliosis, but found that she had no severe physical impairments. The ALJ concluded Robinson had the Residual Functional Capacity (RFC) to do work at all exertional levels, but limited her to simple, unskilled work requiring no more than minimal social contact. (AR 29.) Robinson had no past relevant work to evaluate at Step Four. At Step Five, the ALJ found, based on the

---

[2] Initially, Robinson also sought Disability Insurance Benefits (DIB). However, at the hearing, Robinson amended her request to be solely one for SSI. (AR 42.) Therefore, the relevant onset date was the time of application, October 2009. (AR 44-45.)

- 2 -

Medical-Vocational Guidelines, that Robinson could perform other work available in the national economy.

## STANDARD OF REVIEW

The Commissioner employs a five-step sequential process to evaluate SSI claims. 20 C.F.R. § 416.920; *see also Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing she (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) claimant's RFC precludes her from performing her past work. 20 C.F.R. § 416.920(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, she does not proceed to the next step. 20 C.F.R. § 416.920(a)(4).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported

by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

## DISCUSSION

Robinson argues the ALJ committed four errors: (1) the ALJ erred at Step Two when he did not find Robinson's spinal problems to be a severe impairment; (2) the ALJ erroneously evaluated Robinson's credibility; (3) the ALJ improperly rejected the opinion of Robinson's treating physician, Dr. Afek; and (4) the ALJ's Step Five determination is erroneous due to the errors at Step Two and in determining Robinson's RFC.

**Step Two**

Robinson argues that, at Step Two, the ALJ erred in failing to find her spinal problems to be a severe impairment. Even if Robinson's spinal problems would qualify as severe under the regulations, excluding them at Step Two has no practical relevance. As long as the ALJ finds at least one severe impairment, he proceeds past Step Two, as

he did in this case. 20 C.F.R. § 416.920(a)(4). Regardless of the Step Two findings, when formulating a claimant's RFC between Steps Three and Four, the ALJ must consider all impairments, severe and non-severe. 20 C.F.R. § 416.945(a)(2). The ALJ did that in this case by considering Robinson's spinal issues when evaluating her RFC. (AR 30.) Robinson challenged the ALJ's RFC finding within her arguments regarding credibility and her treating physician's opinion, which are addressed below. Any error at Step Two is irrelevant.

**Credibility**

Robinson challenges the ALJ's finding on her credibility regarding her symptoms. Robinson testified that she does not remember what she reads (AR 44), that she has difficulty leaving her house and is often late (AR 45), and grocery shops and walks her dog at night when no one is out (AR 45, 50). In her function report, Robinson stated that she goes out a couple times a week, when it's dark (AR 187); cannot pay bills or use a checkbook because she gets confused and cannot concentrate for long (AR 187); gets "real nervous" and confused when around people, gets very anxious and nervous and "can't seem to get out of [her] house" (189, 190); goes in circles and cannot complete tasks, loses concentration after a few minutes, and must read or be told things multiple times (189, 191).

The ALJ found that Robinson's testimony was not fully credible. Specifically, he found that her statements—that her symptoms prevented her from leaving the house, concentrating, and interacting socially—were not credible to the extent they were inconsistent with his finding that she could do simple, unskilled work with minimal social

contact. (AR 30, 32.) The ALJ found that claimant could perform at a high level and care for herself and her daughter. (*Id.*) The ALJ noted that Robinson only had sought mental health treatment recently and had some symptom improvement. (*Id.*) Further, the ALJ stated that Robinson was not always compliant with treatment, which might have impacted its efficacy. (*Id.*) Finally, the ALJ found her symptom testimony was not consistent with the objective medical evidence. (*Id.*)

In general, "questions of credibility and resolution of conflicts in the testimony are functions solely" for the ALJ. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). However, "[w]hile an ALJ may certainly find testimony not credible and disregard it . . . [the court] cannot affirm such a determination unless it is supported by specific findings and reasoning." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884-85 (9th Cir. 2006); *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1995) (requiring specificity to ensure a reviewing court the ALJ did not arbitrarily reject a claimant's subjective testimony); SSR 96-7p. "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

"First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell*, 947 F.2d at 344). ALJ Baum found Robinson had satisfied part one of the test by proving an impairment that could produce the symptoms alleged. (AR 30.) Second, if "there is no

affirmative evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281, 1283-84 (9th Cir. 1996)). The ALJ did not make a finding, and there is no record evidence of, malingering. Therefore, to support his discounting of Robinson's assertions regarding the severity of her symptoms, the ALJ had to provide clear and convincing, specific reasons. *See Garrison v. Colvin*, No. 12-15103, 2014 WL 3397218, *16 (9th Cir. July 14, 2014); *Vasquez v. Astrue,* 547 F.3d 1101, 1105 (9th Cir. 2008) (quoting *Lingenfelter*, 504 F.3d at 1036).

    The ALJ found Robinson not credible because she could "perform at a relatively high functional level" and care for herself and her daughter. (AR 32.) Robinson and her daughter live with her parents, thus, she does not provide care alone for her child. Further, her child is sixteen and does not require close supervision or care-taking. Robinson testified that her major impediment to employment is social phobia and anxiety. Robinson consistently reported that she grocery shops only late at night so that not many people will be at the store. (AR 45, 187, 297, 408, 482.) Providing care for herself and others inside the home is not inconsistent with her allegations of disability, and is not a clear and convincing reason to find her incredible.

    Next, the ALJ noted that Robinson had only sought mental health treatment recently and had some symptom improvement. (AR 32.) Robinson began receiving specialized mental health treatment a few months prior to seeking SSI. (AR 482.) Prior to that time, she obtained treatment and medication for anxiety from her primary care

physician. (AR 444-47.) Because she has been seeking treatment for the entire relevant time period, this is not a basis for discounting her credibility.

Regarding symptom improvement, the ALJ's opinion was somewhat inconsistent. In discussing credibility, he noted "some minor success" in addressing symptoms. (AR 32.) In a prior discussion on treatment, the ALJ stated that the records reflected varied success in controlling Robinson's symptoms, with some initial improvement but increased irritability recently. (AR 31.) This second statement is a relatively accurate reflection of the records, which indicate there was an ebb and flow in the severity of Robinson's symptoms. Limited, temporary improvement does not on its face provide a clear and convincing reason to discount a claimant's credibility. "[I]t is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 2014 WL 3397218, at *18 (noting that cycles of improvement and deterioration are common in mental health and an ALJ cannot focus on isolated instances of progress).

Third, the ALJ stated that Robinson was not always consistent with treatment (which that might have improved her results), citing exhibits 11F, 20F and 23F. (*Id.*) Exhibits 11F and 20F document appointments and contact with case managers and do not evidence any lack of treatment or inconsistency. (AR 368-76.) There is only one documented missed appointment with her psychiatrist in January 2010, but Robinson did call to obtain her prescription and there is no evidence of non-compliance with medication. (AR 529, 531.) However, the records do indicate Robinson did not maintain the expected contact with her case manager and "clinical team" (AR 551, 555, 557);

when informed of that expectation, Robinson stated that she was not aware of it (AR 561). Some inconsistency in meeting with her case manager would have minimal bearing on her psychological symptoms. Because Robinson was compliant with medication and her medical appointments, inconsistency is not a clear and convincing reason to discount her credibility.

Finally, the ALJ found Robinson's allegations were not consistent with the objective medical evidence. (*Id.*) If the objective medical evidence fully explained a claimant's symptoms then credibility would be irrelevant. Credibility factors into the ALJ's decision only when the claimant's stated symptoms are not substantiated by the objective medical evidence. SSR 96-7p. Thus, it is error for an ALJ to discount credibility solely because a claimant's symptoms are not substantiated by the medical evidence. *Id.*; *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). As this is the only basis remaining for the ALJ's credibility finding it is insufficient to sustain it.

**Treating Physician, Dr. Afek**

Robinson argues the ALJ should have given more weight to her treating physician Dr. Paul Afek.

On October 7, 2010, Dr. Afek completed a Physical Residual Functional Capacity Assessment, in which he stated that Robinson could stand for 2 hours or less in a work day; and sit only for 15-30 minutes without needing to change position. (AR 433.) He opined she could occasionally carry ten pounds and reach; never carry twenty pounds; and frequently feel, finger, handle and grasp. (*Id.*) He also stated that she needed to lie down during the day, alternate sitting and standing, and would miss more than five days

per month due to physical conditions. (*Id.*) The form completed by Dr. Afek was specific to Robinson's physical limitations and capacity. Robinson's psychiatrist completed an assessment focused on her mental limitations, finding marked limitations and 5 or more days absence per month due to mental illness. (AR 588-89.) The psychiatric opinion also was discounted by the ALJ (AR 31), but that finding was not challenged by Robinson in this appeal (*see* Doc. 18).

The ALJ gave Dr. Afek's opinion little weight, finding it was not supported by "clinical documentation that reflects her symptoms are well controlled with medication" and was inconsistent with the overall medical record. (AR 30.) The ALJ acknowledged there was evidence of degenerative disc disease but found her physical exams were relatively normal and did not support the level of limitation stated by Dr. Afek. (*Id.*)

Contrary to Dr. Afek, examining physician Jeri Hassman opined that Robinson did not have any physical conditions that would impose limitations for 12 months. (AR 437.) Generally, a treating physician's opinion is afforded more weight than the opinion of an examining physician, and an examining physician's opinion is afforded more weight than a nonexamining or reviewing physician's opinion. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). When there are contradictory medical opinions such as there are in this case, to reject a treating physician's opinion, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

The ALJ relied on records indicating Robinson's symptoms were well controlled with medication. On initial exam by Dr. Afek, May 7, 2009, Robinson stated

hydrocodone provided good pain relief. (AR 445.) At the next appointment, she reported not doing well but had not taken the cyclobenzaprine (muscle relaxant) and ran out of hydrocodone. (AR 446.) Robinson reported ongoing back pain on July 9, 2009, but indicated it was generally controlled with hydrocodone and she did not try the muscle relaxant that was prescribed. (AR 447.) From August through October, she reported her pain control was OK on medication, although she felt pain after doing a lot of yard work. (AR 444, 449, 450, 453.) She similarly reported, in late November, that her medications were working well and, although she had increased pain when working, it was tolerable. (AR 454.) In February 2010, Robinson continued to report that her pain control was generally good, but she stated hydrocodone was not always sufficient. (AR 361.) In March 2010, Robinson reported to specialist Dr. Tracy Allen at Tucson Orthopaedic that her she obtained pain relief from Vicodin and ibuprofen. (AR 358.) In May, she sought a longer-acting pain killer, finding hydrocodone not sufficient but getting some relief from Meloxicam (an anti-inflamatory). (AR 429.) In June she told Dr. Allen she took Vicodin to manage the pain; she also began physical therapy, which she reported decreased but did not alleviate the pain. (AR 379, 565, 567.) In August and October, 2010, and again in January and March 2011, she reported her pain control was generally good. (AR 463, 590, 592, 594.) Over the course of almost two years, Robinson reported that she was achieving relief with medication and physical therapy. Her back pain was not cured but it was managed to a point where doing physical labor was tolerable. The treatment notes indicate Robinson's pain was well controlled, which was a specific, legitimate reason to

discount Dr. Afek's very restrictive opinion and it is supported by substantial evidence. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).

The Court next looks at Robinson's physical exams, upon which the ALJ also relied. The only record of Dr. Afek conducting a physical exam related to Robinson's back pain was during the initial visit on May 7, 2009, and he recorded simply tenderness in paraspinal muscles. (AR 445.) Dr. Allen's exams reflected almost entirely normal results. (AR 358, 565.) In August 2010, and January and April 2011, Robinson had some pain with lumbosacral extension and rotation, but other testing was normal. (AR 567, 569.) Similarly, Dr. Jeri Hassman conducted an exam of Robinson in January 2010, with all normal results, including full range of motion. (AR 435-36.) Again, the ALJ's reliance on these exams is a legitimate reason supported by substantial evidence to discount Dr. Afek's opinion.

To support her argument, Robinson cites Dr. Allen's diagnosis (based on an MRI) that Robinson has adult degenerative scoliosis, mild lumbar stenosis at L4-5 and moderate to severe foraminal narrowing at L5 to S1. (AR 521, 569.) Additionally, Robinson cites Dr. Allen's prescribed treatment of epidural injections as an indication of severe pain. Although the diagnosis is relevant, and was acknowledged by the ALJ, it does not undermine the substantial record evidence that Robinson generally was successful at controlling any resulting pain. Further, the record indicates the injections were an alternative to daily medication, not necessarily an indication of severity. Robinson indicated to Dr. Afek that she would like to get off or decrease the drugs. (AR 463.)

Finally, the ALJ noted that Robinson sought disability solely based on mental impairments. (AR 28.) In a disability report, completed shortly after Robinson's initial application, Robinson stated that the following conditions limited her ability to work: "social anxiety, agoraphobia, pmdd, ocd, depression." (AR 178.) In completing function reports, neither Robinson nor her mother indicated that Robinson's conditions affected any physical activities, such as standing, sitting, lifting, or using her hands. (AR 189, 199.)

The ALJ provided specific, legitimate reasons to discount Dr. Afek's opinion and those reasons are supported by substantial evidence.

**Step Five**

Robinson argues that if the Court changes the Step Two finding and credits Dr. Afek's opinion, then she would be found disabled at Step Five. Because the Court determined there was no substantive error at Step Two and no error regarding Dr. Afek's opinion, this argument does not provide a ground for relief.

## CONCLUSION

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). When a court finds that an administrative decision is flawed, the remedy should generally be remand for "additional investigation or explanation." *INS v. Ventura*, 537 U.S. 12, 16 (2006) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)); *see also Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004). However, a district court should credit as true claimant symptom testimony that was improperly rejected by the ALJ and remand for benefits if:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the testimony; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004); *Garrison v. Colvin*, No. 12-15103, 2014 WL 3397218, *22 (9th Cir. July 14, 2014) (precluding remand for further proceedings if the purpose is solely to allow ALJ to revisit the medical opinion he rejected). The Ninth Circuit recently clarified that application of the credit as true is *mandatory* unless the record creates serious doubt that the claimant is disabled. *Garrison*, 2014 WL 3397218, at *21.

Here, credit as true as to Robinson's testimony is not mandatory because further proceedings are necessary before a determination of disability can be made. The Court cannot resolve this matter simply by crediting Robinson's testimony because there is not sufficient evidence to re-evaluate Step Five. The ALJ's RFC finding is flawed because he improperly discounted Robinson's testimony, which would impact the conclusion at Step Five that there is work available in the national economy. *See Ghanim v. Colvin*, No. 12-35804, 2014 WL 4056530, *10 (9th Cir. Aug. 18, 2014). The ALJ resolved Step Five based solely on the Medical-Vocational Guidelines. After re-examining Robinson's credibility and revising her RFC, the ALJ must look again at Step Five. In evaluating that step, the ALJ may need to go beyond the Guidelines and obtain the testimony of a vocational expert. *See Vasquez*, 572 F.3d at 597 (finding remand for further proceedings proper when there is no vocational testimony addressing limitations "as established by improperly discredited evidence.") (quoting *Harman v. Apfel*, 211 F.3d 1171, 1178-79

(9th Cir. 2000)). Finally, the Court does not find this case warrants discretionary application of the credit-as-true rule. *See Vasquez v. Astrue*, 572 F.3d 586, 593-94 (9th Cir. 2008) (remanding for further proceedings but instructing the ALJ to credit symptom testimony as true because of the claimant's advanced age and excessive delay in processing of her application) (citing *Hammock v. Bowen*, 879 F.2d 498 (9th Cir. 1989)).

Accordingly,

**IT IS ORDERED** that this case is remanded to the ALJ for a new hearing and further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court should enter judgment and close this case.

Dated this 10th day of September, 2014.

D. Thomas Ferraro
United States Magistrate Judge